1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**POMERANTZ LLP**
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
Email: jpafiti@pomlaw.com

*Attorney for Plaintiff*

*[Additional Counsel on Signature Page]*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUMIT GARG, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> GENIUS BRANDS INTERNATIONAL, INC. and ANDY HEYWARD, <br><br> Defendants. | Case No. <br><br> **CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** <br><br> JURY TRIAL DEMAND |

Plaintiff Sumit Garg ("Plaintiff") alleges the following based on the investigation conducted by Plaintiff's counsel, which included, among other things: a review of public documents published by Genius Brands International, Inc. ("Genius" or the "Company"); securities analyst reports and advisories about Genius; press releases and other public statements issued by Genius; media reports about Genius; court records; and other public documents. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.     This is a securities fraud class action brought to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act") on behalf of all persons and entities other than Defendants (defined below) who purchased or otherwise acquired Genius securities from March 17, 2020 through July 5, 2020, inclusive (the "Class Period"), and who were damaged thereby.

2.     Genius stock was heavily marketed to retail investors through the use of several misleading tactics to entice investment. For example, Genius repeatedly compared itself to Netflix, calling itself the "Netflix for Kids, but free." Netflix is, of course, one of the most successful growth stocks of the last decade, growing from under $10 per share in 2010 to over $450 per share today, and likening Genius to Netflix created an unwarranted "fear of missing out" feeling among investors. Genius also touted its purported association with celebrities like Arnold Schwarzenegger and Stan Lee to create hype.

3.      Throughout the Class Period, Defendants made false and/or misleading statements regarding: (i) Nickelodeon's purported broadcast expansion of Genius's Rainbow Rangers cartoon; (ii) subscription fees for the Kartoon Channel!; and (iii) the Company's growth potential and overall prospects as a company.  While the share price of Genius stock was artificially inflated because of these misstatements, Genius registered for sale tens of millions of shares, allowing certain longtime investors to cash out at the expense of Plaintiff and the Class.

4.      Genius is a multimedia company that licenses entertainment content for children.  Genius securities trade on the NASDAQ stock exchange in the United States under the ticker symbol "GNUS."

5.      For nearly its entire history as a company, Genius was a thinly traded educational multimedia company.  In September 2019, Genius was sent a "delisting" notice from NASDAQ for failing to maintain a $1.00 per share minimum for 30 days. Throughout the beginning of 2020, Genius shares traded for less than $1.00 per share, and even traded as low as $0.0520 per share on March 12, 2020.

6.      Beginning on March 24, 2020, Genius conducted several direct offerings of shares to certain "long standing investors" whereby millions of shares were sold at prices below the publicly traded market price.  For example, on March 24, 2020, the Company sold four million shares in a direct offering for proceeds of approximately $1 million.  The shares were sold to long-standing investors at $0.25 per share although the then-current market price was $0.31 per share.  On May 7, 2020, Genius conducted a direct offering of

eight million shares for proceeds approximating $2.8 million.  The shares were sold to long-standing investors at $0.35 per share even though the then-current market price was $0.48 per share.

7.     On May 11, 2020, Genius conducted another direct offering of 12 million shares for total proceeds of $5.4 million.  The shares were sold to longtime investors for $0.45 per share even though the shares traded for $0.83 cents.  On May 19, 2020, Genius sold 7.5 million shares to long-time shareholders at $1.20 per share, even though the then-current market price was $1.50 per share.  On May 29, 2020, Genius sold 20 million shares in a direct offering to long-time shareholders at $1.50 per share, even though the then-current market price was $1.83 per share.

8.     Alongside these offerings, Genius conducted a nonstop campaign of hype and press releases to boost the share price of Genius shares.  These releases touted the intellectual properties connected to Genius and hyped the launch of its new free educational multimedia platform, the "Kartoon Channel!" app.  The press releases contained exaggerated statements, buzzwords, and they highlighted tenuous connections to celebrities like Arnold Schwarzenegger, Warren Buffet, and Stan Lee.  The releases also favorably compared Genius to household media names like Netflix, Disney, and Marvel.

9.     For example, on March 17, 2020, Genius issued a press release hyping "Rainbow Rangers," which is one of Genius's cartoon properties.  The press release stated that Nickelodeon had significantly increased the number of weekly broadcasts of Rainbow

Rangers to twenty-six airings per week and that these airings would have broad coverage in favorable time slots.

10.     In addition, Genius began to release numerous press releases to hype the launch of the Kartoon Channel! app, repeatedly calling it "Netflix for Kids, but Free" and an "Economic Cure for Covid."

11.     These releases had their intended effect, as the price of Genius shares skyrocketed.  After trading significantly less than $1.00 per share in the first few months of 2020, Genius shares began to trade for several dollars per share.  Genius's share price reached a closing high of $7.93 per share on June 3, 2020, and reached a trading high of $11.73 per share during trading on June 4, 2020.

12.     But the Genius story was not all that it seemed.  On June 5, 2020, Hindenburg Research published a report entitled "A Bagholder's Guide to Why We Think Genius Brands Will Be a $1.50 Stock Within a Month" (the "Hindenburg Research Report").  This report questioned the valuation of Genius and highlighted inaccurate public statements made by Genius.

13.     With respect to the Rainbow Rangers intellectual property, the Hindenburg Research Report showed that Rainbow Rangers was actually airing nine times per week, rather than the 26-airings figure noted in Genius's press release.  Moreover, the shows were not airing in favorable time slots and were, instead, being broadcast daily at 3:49 a.m. and then twice additionally on Sunday mornings at 6:00 a.m. and 6:30 a.m.

14.     As the price of Genius shares was still artificially inflated, Genius once again filed securities registration documentation with the United States Securities and Exchange Commission ("SEC").  On June 11, 2020, just prior to the official launch of the Kartoon Channel!, Genius registered 60 million shares for sale by a group of "selling shareholders." These selling shareholders were the same long-standing investors that purchased shares in the direct offerings described above, who could now "cash out" their investment in Genius at inflated prices.  The share price listed in the prospectus was $4.51 per share.

15.     Unfortunately for investors, Genius's multimedia properties and the Kartoon Channel! in general were more hype than substance.  When Genius announced the slate of content, investors began to realize that the Kartoon Channel! was not going to be the new Netflix for Kids, and was just another app in a crowded space.  Indeed, on June 16, 2020, Genius stock declined by approximately 14% as the Company announced the programming lineup for the app.

16.     Investors were also disappointed to learn that, although Genius repeatedly touted the Kartoon Channel! as being free, users wishing to download and interact with the Kartoon Channel! app through Amazon Prime would be forced to pay a $3.99 monthly fee.  In fact, Genius often listed Amazon Prime first when discussing the potential reach of the Kartoon Channel!.

5



17.    On June 19, 2020, while the price of Genius stock was artificially inflated, Defendant Andy Heyward ("Heyward") sold 460,574 shares at an average price of $2.94 per share for a total sale of $1,354,088.

18.    On July 2, 2020, Genius issued a press release touting that a "Key Business Development" would be announced on July 6, 2020.  This vague announcement significantly boosted the stock price, as the price jumped from $2.31 per share on July 1, 2020, to $3.55 on July 2, 2020.

19.    The July 6th announcement, however, was another exaggerated press release whereby Genius announced the creation of a joint venture with POW! Entertainment regarding the intellectual property that Stan Lee created *after* his time at Marvel Entertainment.  Defendant Heyward stated that "[t]he potential value in this single asset, is greater than any IP anywhere in Hollywood."

20.     With these exaggerated statements, investors realized that the gig was up and that there was little substance behind the hype.  Following the July 6, 2020 press release, the price of Genius stock dropped significantly from a close of $3.55 per share on the previous trading day to a closing price of $2.66 per share on July 6, 2020.

21.     Following the launch of the Kartoon Channel! app and following repeated exaggerated press releases, the price of Genius shares has plummeted, as the Company was exposed to be little more than a kid-friendly front for a pump-and-dump scheme to enrich long-term investors and Company executives.  Indeed, as investors have learned the truth, the Company has lost nearly 80% of its value.

## JURISDICTION AND VENUE

22.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5).

23.     This Court has jurisdiction over the subject matter of this action pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331.

24.     Venue is proper in this District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b), as the misleading statements entered into this District.

25.     In connection with the acts, conduct, and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of

interstate commerce, including, but not limited to, the United States mail, interstate telephone communications, and facilities of national securities markets.

## PARTIES

26.    Plaintiff, as set forth in the attached Certification, acquired Guidewire securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

27.    Defendant Genius is a multimedia company based in Beverly Hills, California.  The Company's securities are traded in the United States under the ticker symbol "GNUS."  The securities trade in an efficient market on the NASDAQ national securities market.

28.    Defendant Heyward is the founder and was Chief Executive Officer of Genius at all relevant times.

29.    The Company is liable for the acts of its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

30.    The scienter of the other employees and agents of the Company is similarly imputed to the Company under *respondeat superior* and agency principles.

31.    Genius and Heyward are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

32.    Genius is a multimedia company that licenses entertainment content for

children.  Genius securities trade on the NASDAQ stock exchange in the United States under the ticker symbol "GNUS."

33.    For nearly its entire history as a company, Genius was a thinly traded educational multimedia company.  In September 2019, Genius was sent a "delisting" notice from NASDAQ for failing to maintain a $1.00 per share minimum for 30 days.  Throughout the beginning of 2020, Genius shares traded for less than $1.00 per share, and even traded as low as $0.0520 per share on March 12, 2020.

34.    Beginning on March 24, 2020, Genius conducted several direct offerings of shares to certain "long standing investors" whereby millions of shares were sold at prices below the publicly traded market price.  For example, on March 24, 2020, the Company sold four million shares in a direct offering for proceeds of approximately $1 million.  The shares were sold to long-standing investors at $0.25 per share although the then-current market price was $0.31 per share.  On May 7, 2020, Genius conducted a direct offering of eight million shares for proceeds approximating $2.8 million.  The shares were sold to long-standing investors at $0.35 per share even though the then-current market price was $0.48 per share.

35.    On May 11, 2020, Genius conducted another direct offering of 12 million shares for total proceeds of $5.4 million.  The shares were sold to long-time investors for $0.45 per share even though the shares traded for $0.83 cents.  On May 19, 2020, Genius sold 7.5 million shares to long-time shareholders at $1.20 per share, even though the then-current market price was $1.50 per share.  On May 29, 2020, Genius sold 20 million shares

in a direct offering to long-time shareholders at $1.50 per share, even though the then-current market price was $1.83 per share.

36.     Alongside these offerings, Genius conducted a nonstop campaign of hype and press releases to boost the share price of Genius shares.  These releases touted the intellectual properties connected to Genius and hyped the launch of its new "free" educational multimedia platform, the "Kartoon Channel!" app.  The press releases contained exaggerated statements, buzzwords, and they highlighted tenuous connections to celebrities like Arnold Schwarzenegger, Warren Buffet, and Stan Lee.  The releases also favorably compared Genius to household media names like Netflix, Disney, and Marvel.

37.     On June 11, 2020, just prior to the official launch of the Kartoon Channel!, Genius registered 60 million shares for sale by a group of "selling shareholders."  These selling shareholders were the same long-standing investors that purchased shares in the direct offerings described above, who could now "cash out" their investment in Genius at inflated prices.  The share price listed in the prospectus was $4.51 per share.

## Materially False and Misleading Statements Issued During the Class Period

38.     On March 17, 2020, Genius issued a press release entitled "Nickelodeon Expands Daily Broadcast of Genius Brands International's Hit Preschool Series, Rainbow Rangers."  This press release stated in part:  "'Genius Brands' announces today that Nickelodeon, a Viacom Inc. company (Nasdaq: VIA, VIAB), has again increased the broadcast of the Company's hit original preschool series, *Rainbow Rangers*, to 26 airings

per week. Nick Jr. now airs *Rainbow Rangers* Monday – Friday, four airings per day, and six airings on the weekends."

39.     On May 13, 2020, Genius issued a press release which attached a "Shareholder Letter" from Defendant Heyward.  The letter stated in part:

> *Kartoon Channel!* is what we like to call a "Netflix for kids," except it is free. There is no subscription fee. It is fully ad-supported. It is a pure cartoon play, with no "natural predators," and what one of our board members described as an "*economic vaccine for COVID-19.*"
>
> * * *
>
> *Kartoon Channel!* is an 'on-demand' channel which means like Netflix, we offer a *menu* of offerings and the *viewer* then determines which program he or she chooses to watch. Having said the above, *when Kartoon Channel!* goes live on June 15, it will be available in over 100 million U.S. television households, and over 200 million mobile devices. All free to the viewer. All ad-supported (with the exception of a small tranche of platforms, where the viewer can elect an SVOD option with no commercials). If you have Amazon Prime, you can see it. If you have Apple TV, you can see it. If you have Comcast, Cox, or DISH and Sling TV, you can see it. I cannot recall any children's channel ever starting with such complete distribution, on Day 1, *and let alone, at a time when the demand could not possibly be higher.* Those of us with young kids (as I do) have seen this more clearly than anyone. Kids are staying home and viewing the same shows over and over, but hungry for something different. Parents are searching for new content, often looking for ways to enrich their kids from home with something fresh and original.

(Emphases in original.)

40.     The statements referenced in ¶¶ 38-39, *supra*, were materially false and/or misleading because they misrepresented and failed to disclose that: (i) Nickelodeon's purported Rainbow Rangers expansion was temporary and/or overstated; (ii) the Kartoon Channel! would be subject to subscription fees through Amazon Prime; and (iii) the Kartoon Channel! had little viability for future growth for Genius.

11

**The Truth Begins to Emerge**

41.     Following the massive hype and pump of Genius stock, on June 5, 2020, the Hindenburg Research Report was published.  This report questioned the valuation of Genius and highlighted inaccurate public statements made by Genius.

42.     With respect to Genius's Rainbow Rangers intellectual property, the Hindenburg Research Report showed that Rainbow Rangers was actually airing nine times per week, rather than the 26-airings figure noted in Genius' press release.  Moreover, the episodes were not airing in favorable time slots and were, instead, being broadcast daily at 3:49 a.m. and then twice additionally on Sunday mornings at 6:00 a.m. and 6:30 a.m.

43.     Upon the release of the Hindenburg Research Report, the price of Genius securities fell $0.92 per share, or over 13%, to close at $5.94 per share on June 5, 2020, damaging investors.

44.     With respect to the Kartoon Channel!, it was soon realized that its business prospects was more hype than substance.  When Genius announced the slate of content, investors began to realize that the Kartoon Channel! was not going to be the new Netflix for Kids, and was just another app in a crowded space.  Indeed, on June 16, 2020, Genius stock declined by approximately 14% as the Company announced the programming lineup for the app.

45.     On July 6, 2020, Genius issued another exaggerated press release whereby Genius announced the creation of a joint venture with POW! Entertainment regarding the intellectual property that Stan Lee created after his time at Marvel Entertainment.

Defendant Heyward stated that "[t]he potential value in this single asset, is greater than any IP anywhere in Hollywood."  With these exaggerated statements, investors realized that the gig was up and that there was little substance behind the hype.  Following the July 6, 2020 press release, the price of Genius stock dropped significantly from a close of $3.55 per share on the previous trading day to a closing price of $2.66 per share on July 6, 2020.

46.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and the other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

47.     Plaintiff brings this action as a class action pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of a class consisting of all those who purchased or otherwise acquired Genius securities during the Class Period and were damaged upon the revelation of the alleged corrective disclosure (the "Class").  Excluded from the Class are the Defendants named herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

48.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Genius securities were actively traded on the NASDAQ exchange.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes

that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Genius or its transfer agent and/or NASDAQ and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

49.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

50.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

51.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

> (a)     whether the federal securities laws were violated by Defendants' acts as alleged herein;
>
> (b)     whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations, and management of Genius;
>
> (c)     whether the Individual Defendants caused Genius to issue false and misleading statements during the Class Period;
>
> (d)     whether Defendants acted knowingly or recklessly in issuing false and

misleading statements;

(e)     whether the prices of Genius securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

(f)     whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

52.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.

53.     Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## PRESUMPTION OF RELIANCE

54.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

(a)     Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

(b)     the omissions and misrepresentations were material;

(c)     Genius securities are traded in an efficient market;

(d)     the Company's securities were liquid and traded with moderate to heavy volume during the Class Period;

15

(e)     the Company's securities traded on the NASDAQ exchange in the United States;

(f)     the Company was covered by securities analysts;

(g)     the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

(h)     Plaintiff and members of the Class purchased, acquired, and/or sold Genius securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed without knowledge of the omitted or misrepresented facts.

55.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

56.     Alternatively, Plaintiffs and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## **COUNT I**

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)**

57.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

16

58.     This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. §78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

59.     During the Class Period, Defendants engaged in a plan, scheme, conspiracy, and course of conduct pursuant to which they knowingly or recklessly engaged in acts, transactions, practices, and courses of business that operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes, and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Genius securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Genius securities at artificially inflated prices. In furtherance of this unlawful scheme, plan, and course of conduct, Defendants, and each of them, took the actions set forth herein.

60.     Pursuant to the above plan, scheme, conspiracy, and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the annual reports, SEC filings, press releases, and other statements and documents, as described above, including statements made to securities analysts and the media, that were designed to influence the market for Genius securities. Such reports, filings, releases, and statements were materially false and misleading in that they failed to disclose material

adverse information and misrepresented the truth about Genius's business and operations.

61. By virtue of Defendant Heyward's position at Genius, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants. Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth. In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted, as described above.

62. Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control. As a senior manager and/or director of Genius, Heyward had knowledge of the details of Genius's internal affairs.

63. Defendant Heyward is liable both directly and indirectly for the wrongs complained of herein. Because of his position of control and authority, Defendant Heyward was able to, and did, directly or indirectly, control the content of the statements of Genius. As an officer and/or director of a publicly held company, Defendant Heyward had a duty to disseminate timely, accurate, truthful, and complete information with respect to Genius's businesses, operations, future financial condition, and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases,

and public statements, the market price of Genius securities was artificially inflated throughout the Class Period.  In ignorance of the adverse facts concerning Genius's business and financial condition, which were concealed by Defendants, Plaintiff and other members of the Class purchased or otherwise acquired Genius securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities, and/or statements disseminated by Defendants, and were damaged thereby.

64.    During the Class Period, Genius securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued, or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired Genius securities at prices artificially inflated by Defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Genius securities was substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of Genius securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

65.    By reason of the conduct alleged herein, Defendants have knowingly or recklessly, directly or indirectly, violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

66.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions, and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against Defendant Heyward)**

67.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

68.     During the Class Period, Defendant Heyward participated in the operation and management of Genius and conducted and participated, directly and indirectly, in the conduct of Genius's business affairs.  Because of his senior position, Defendant Heyward knew the adverse non-public information about Genius's current financial position and future business prospects.

69.     As an officer and/or director of a publicly owned company, Defendant Heyward had a duty to disseminate accurate and truthful information, with respect to Genius's business practices, and promptly correct any public statements issued by Genius that had become materially false or misleading.

70.     Because of his position of control and authority as a senior director or officer and executive team member, Defendant Heyward was able to, and did, control the contents of the various reports, press releases, and public filings that Genius disseminated in the

marketplace during the Class Period concerning the Company's business, operational, and accounting policies. Throughout the Class Period, Defendant Heyward exercised his power and authority to cause Genius to engage in the wrongful acts complained of herein. Defendant Heyward, therefore, was a "controlling person" of Genius within the meaning of Section 20(a) of the Exchange Act. In this capacity, Defendant Heyward participated in the unlawful conduct alleged herein that artificially inflated the market price of Genius securities.

71.     Defendant Heyward, therefore, acted as a controlling person of Genius. By reason of his senior management position and/or being a director of Genius, Defendant Heyward had the power to direct the actions of, and exercised the same to cause, Genius to engage in the unlawful acts and conduct complained of herein. Defendant Heyward exercised control over the general operations of Genius and possessed the power to control the specific activities that comprise the primary violations about which Plaintiff and the other members of the Class complain.

72.     By reason of the above conduct, Defendant Heyward is liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Genius.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Fed. R. Civ. P. 23 and certifying Plaintiff as Class Representative;

B.      Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.      Awarding Plaintiff and the other members of the Class pre- and post-judgment interest, as well as reasonable attorneys' fees, expert fees, and other costs; and

D.      Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated:  August 26, 2020                         Respectfully submitted,

POMERANTZ LLP

*/s/ Jennifer Pafiti*
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
Email: jpafiti@pomlaw.com

POMERANTZ LLP
Jeremy A. Lieberman
(*pro hac vice* application forthcoming)
J. Alexander Hood II
(*pro hac vice* application forthcoming)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: jalieberman@pomlaw.com
Email: ahood@pomlaw.com

POMERANTZ LLP
Patrick V. Dahlstrom
(*pro hac vice* application forthcoming)
10 South La Salle Street, Suite 3505

Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
Email: pdahlstrom@pomlaw.com

**BRONSTEIN, GEWIRTZ & GROSSMAN, LLC**
Peretz Bronstein
(*pro hac vice* application forthcoming)
60 East 42nd Street, Suite 4600
New York, New York 10165
Telephone: (212) 697-6484
Facsimile: (212) 697-7296
Email: peretz@bgandg.com

***Attorneys for Plaintiff***

Wednesday, August 19, 2020

## Genius Brands  (GNUS)

# CERTIFICATION PURSUANT TO FEDERAL SECURITIES LAWS

1.  I make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2. I have reviewed a Complaint against Genius Brands International, Inc. ("Genius Brands" or the "Company") and authorize the filing of a comparable complaint on my behalf.

3.  I did not purchase or acquire Genius Brands securities at the direction of plaintiffs counsel, or in order to participate in any private action arising under the Securities Act or Exchange Act.

4.   I am willing to serve as a representative party on behalf of a Class of investors who purchased or acquired Genius Brands securities during the class period, including providing testimony at deposition and trial, if necessary.  I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.  To the best of my current knowledge, the attached sheet lists all of my transactions in Genius Brands securities during the Class Period as specified in the Complaint.

6.   During the three-year period preceding the date on which this Certification is signed, I have not sought to serve as a representative party on behalf of a class under the federal securities laws.

7.   I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8.   I declare under penalty of perjury that the foregoing is true and correct.

**Name**

**Print Name**
Sumit Garg

**Signature**

1



(redacted)

**Full Name**

Sumit Garg

**Genius Brands International, Inc. (GNUS)**                                                    **Garg, Sumit**

**List of Purchases and Sales**

| Transaction Type | Date | Number of Shares/Unit | Price Per Share/Unit |
|---|---|---|---|
| Purchase | 6/4/2020 | 10 | $7.7100 |
| Purchase | 6/4/2020 | 20 | $10.8800 |
| Purchase | 6/4/2020 | 10 | $7.7100 |